78 N.Y.2d 1031 (1991)
In the Matter of Jessica R., a Child Alleged to be Abused, by Brenda W. Feder, as Law Guardian, Appellant. Westchester County Department of Social Services et al., Respondents.
Court of Appeals of the State of New York.
Argued September 4, 1991.
Decided October 15, 1991.
Brenda W. Feder, Law Guardian, for Jessica R., appellant.
Marilyn J. Slaatten, County Attorney (Marguerite R. Wiess of counsel), for Westchester County Department of Social Services, respondent.
James C. Kahn for Peter R., respondent.
Chief Judge WACHTLER and Judges SIMONS, ALEXANDER, TITONE and HANCOCK, JR., concur; Judge KAYE dissents in part in an opinion in which Judge BELLACOSA concurs.
*1032 MEMORANDUM.
The order of the Appellate Division should be reversed, without costs, and the matter remitted to the Family Court for reconsideration in light of the amendment to Family Court Act § 1038 (c). The certified question should be answered in the negative.
Respondent, charged in the Family Court with sexually molesting his daughter, seeks to have her psychologically examined by an expert of his choice. The Family Court has inherent power to order such an examination by a court-appointed expert in order to aid the court in deciding the case. But at the time this application was made, if those having custody of the child objected, there was no means by which the respondent could have the child examined by an expert of his choice in order to prepare for the trial, even when such an exam had previously been performed by the petitioner's expert. However, while the case was on appeal the Legislature amended the discovery statute (Family Ct Act § 1038 [c]) by providing that a "respondent or the law guardian may move for an order directing that any child who is the subject of a proceeding under this article be made available for examination by a physician, psychologist or social worker selected by *1033 such party or law guardian." The statute further provides that "[i]n determining the motion, the court shall consider the need of the respondent or law guardian for such examination to assist in the preparation of the case and the potential harm to the child from the examination." The statute is designed to enhance procedural fairness and the fact-finding process, particularly in cases where the petitioner's proof will depend substantially on expert opinion. (NY State Assembly mem, Bill No. A 7486-A.) Although the statute was not in effect at the time of the original application, it is now the law, and is controlling on this appeal (see, e.g., Kelly v Long Is. Light. Co., 31 N.Y.2d 25, 29, n 3). However, we agree with the view expressed by Justice Rosenblatt at the Appellate Division that the case should be remitted to the Family Court for reconsideration in light of the change in the law.
Section 1038 (c) of Family Court Act is a discovery statute but examination of the child by the respondent's expert is not to be routinely granted upon demand. The application is addressed to the court's discretion and the court must determine whether, under the circumstances of the particular case, the potential benefits outweigh the potential harm. In the case now before us there is very little in the record to inform the court on these points. The divergent views expressed by the Judges in writings at the Appellate Division, seeking to apply the statute to a record made before the statute went into effect, are based primarily on perceptions of theoretical benefits and speculative harm. Because neither the Family Court nor the parties had the benefit of the statute when the application was made, and thus did not fully explore these issues in the context of this particular proceeding, the case should be remitted for further inquiry and reconsideration. The scope of the inquiry is within the court's discretion. There is no need to conduct a formal hearing in this or other cases unless the court finds it would be helpful to supplement or further probe the parties submissions. But in view of the fact that examinations by an adversary's expert will almost always present potential harm to the child as well as potential benefits for the respondent and the truth-finding process, the facts bearing on these issues should be developed in some depth before the court, in the exercise of its discretion, determines the appropriate balance.
In response to the partial dissent we would simply note that applications as sensitive as these should not be mechanically or technically decided by assigning burdens of proof and *1034 determining whether one party or the other has met a particular burden. The statute places the burden on the court to exercise sound judgment after weighing all the factors bearing on the potential benefit to the applicant and the truth-finding process, if both sides are able to present experts who have examined the child, and the potential harm to the child which may result from the additional exam. In determining whether to grant or deny the application the court must also take into account its power to condition the order, if necessary to achieve an appropriate balance.
KAYE, J. (concurring in part and dissenting in part).
In 1988, the Westchester County Department of Social Services (DSS) filed an abuse and neglect petition, alleging that, in July 1988, respondent had sexually abused his four-year-old daughter, Jessica R. This action was taken after the victim had been evaluated by a Child Sexual Abuse Syndrome specialist, known as a validator, retained by DSS. Respondent then requested an order directing that the child be produced for examination by a validator of his choice.
The majority concludes that the matter should be remitted so that Family Court may decide, in its discretion, whether Jessica R.  now eight years old  should be subject to this second validation examination. Because of respondent's failure to show any need for another examination, I disagree with the majority's disposition and would deny his motion.
It is by now well established that abused children evidence distinct reactions and that expert observation of this behavior may constitute substantive evidence of abuse (see generally, Myers et al., Expert Testimony in Child Sexual Abuse Litigation, 68 Neb L Rev 1 [1989]; Comment, The Admissibility of Expert Psychological Testimony in Cases Involving the Sexual Misuse of a Child, 42 Miami L Rev 1033 [1988]; Comment, The Admissibility of Expert Testimony in Intrafamily Child Sexual Abuse Cases, 34 UCLA L Rev 175 [1986]). The validation procedure is the process by which an expert seeks to determine if the child suffers from "intrafamilial child sex abuse syndrome" (see, Matter of Michael G., 129 Misc 2d 186, 192).
It is generally recognized that the validation process may be traumatic for a child. The "validation process requires that the child establish a relationship with the expert. It necessitates the child's recounting and reliving the traumatic incidents suffered. She must overcome fear, guilt and embarrassment. Multiple validations would subject a truthful child to *1035 another form of child abuse * * * [and] a child fabricating such abuse must be severely emotionally disturbed and could be seriously traumatized by continuous probing." (Matter of Tara H., 129 Misc 2d 508, 509.)
As the majority acknowledges, "examinations by an adversary's expert will almost always present potential harm to the child" (majority opn, at 1033). Indeed, in this case there was evidence that the initial psychiatric evaluation was significantly traumatic to the child (see, 163 AD2d 543, 549).
Against potential for harm to the child must be weighed respondent's need for the examination to assist in preparation of his case (Family Ct Act § 1038 [c]).
As the majority notes, section 1038 (c) was not in effect when Family Court decided the present case. Instead, the court relied on Family Court Act § 251, which provided jurisdiction to order an examination by a court-designated psychiatrist when such an examination would "serve the purposes of this act." As Justice Miller noted at the Appellate Division, section 1038 (c) must also be read consistently with the overriding concern of the Family Court Act, namely the protection of children (163 AD2d, at 551; see also, Family Ct Act § 1011; Matter of Nicole V., 123 AD2d 97, 104 [purpose of article 10 of Family Ct Act can only be achieved by tipping the balance between the rights of children and their parents in favor of protecting the children], affd 71 N.Y.2d 112). It is respondent's burden in seeking a second examination, as it was under section 251, to establish that the need for the procedure outweighs the potential harm to the child (see, Matter of Tara H., supra [decided prior to enactment of Family Ct Act § 1038 (c)]).
Respondent made no showing whatsoever of need. He in no way challenged the impartiality of the DSS expert, or the examination that had already been performed. Additionally, Family Court ordered the entire DSS file turned over to him.
Further relief should not have been ordered on the basis of respondent's bald assertions, made in his attorney's affidavits, that he "is entitled to * * * a mental examination of the infant," that the charges were "difficult to defend," and that in fact a second examination would be "in said child's best interests." Respondent should not be given a second chance to meet the burden of proof he already failed to satisfy.
Order reversed, without costs, and matter remitted to Family Court, Westchester County, for further proceedings in accordance with the memorandum herein. Certified question answered in the negative.